> **NOTICE:**
>
> Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

| B 10 (Official Form 10) (12/12) | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT Middle DISTRICT OF Pennsylvania | | PROOF OF CLAIM |
| Name of Debtor: SHERRY L GUTSHALL | Case Number: 12-06956 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): PNC Bank | |
|---|---|
| Name and address where notices should be sent: PNC Bank PO Box 94982 Cleveland, OH 44101 | COURT USE ONLY <br> ❏ Check this box if this claim amends a previously filed claim. <br><br> Court Claim Number:_____ <br> (*If known*) |
| Telephone number: 1-866-622-2657 EXT 66254  email: | Filed on:_____ |
| Name and address where payment should be sent (if different from above): <br><br> Telephone number:  email: | ❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**   $ 19,844.01

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

✓ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** MONEY LOANED
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: __ __ 7370 | 3a. Debtor may have scheduled account as: _____ (See instruction #3a) | 3b. Uniform Claim Identifier (optional): _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ (See instruction #3b) |
|---|---|---|

| 4. Secured Claim (See instruction #4) <br> Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information. <br><br> **Nature of property or right of setoff:** ✓Real Estate  ❏Motor Vehicle  ❏Other <br> **Describe:** 2309 DERRY ST HARRISBURG PA 17104 <br> **Value of Property:** $ 20,000.00 <br> **Annual Interest Rate** 6.29 % ✓Fixed  or  ❏Variable <br> (when case was filed) | Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: <br><br> $_____ <br><br> **Basis for perfection:** MORTGAGE <br><br> **Amount of Secured Claim:**  $ 19,844.01 <br> **Amount Unsecured:**  $_____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ❏ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). | **Amount entitled to priority:** |
|---|---|---|---|
| ❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). | $_____ |

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.   ❏ I am the creditor's authorized agent.   ❏ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ❏ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Judy Borkey
Title: Bankruptcy Specialist
Company: PNC Bank
Address and telephone number (if different from notice address above):

/s/ Judy Borkey         12/13/2012
(Signature)              (Date)

Telephone number:        email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

### INSTRUCTIONS FOR PROOF OF CLAIM FORM
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As**:
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | SHERRY L GUTSHALL | **Case number:** | 12-06956 |
| **Name of creditor:** | PNC BANK | **Last four digits** of any number you use to identify the debtor's account: | 7370 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due** (1) $ 19,748.98

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 6.29 % | 12/1/12 | 12/5/12 | $ 95.03 |
| ___ % | __/__/____ | __/__/____ | $ _____ |
| ___ % | __/__/____ | __/__/____ | + $ _____ |
| Total interest due as of the petition date | | | $ 95.03 |

Copy total here ▶ (2) + $ 95.03

3. **Total principal and interest due** (3) $ 19,844.01

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | | (1) | $ 0 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $ _____ |
| 3. Attorney's fees | | (3) | $ _____ |
| 4. Filing fees and court costs | | (4) | $ _____ |
| 5. Advertisement costs | | (5) | $ _____ |
| 6. Sheriff/auctioneer fees | | (6) | $ _____ |
| 7. Title costs | | (7) | $ _____ |
| 8. Recording fees | | (8) | $ _____ |
| 9. Appraisal/broker's price opinion fees | | (9) | $ _____ |
| 10. Property inspection fees | | (10) | $ _____ |
| 11. Tax advances (non-escrow) | | (11) | $ _____ |
| 12. Insurance advances (non-escrow) | | (12) | $ _____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ _____ |
| 14. Property preservation expenses. Specify:_____ | | (14) | $ _____ |
| 15. Other. Specify:_____ | | (15) | $ _____ |
| 16. Other. Specify:_____ | | (16) | $ _____ |
| 17. Other. Specify:_____ | | (17) + | $ _____ |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $ 0 |

Print Form

### Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☑ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

---

1. **Installment payments due**

   Date last payment received by creditor    11 / 8 / 12

   Number of installment payments due    (1) 0

2. **Amount of installment payments due**

   ____ installments @    $ _____

   ____ installments @    $ _____

   ____ installments @    + $ _____

   **Total installment payments due as of the petition date**    $ _____    Copy total here ▶  (2) $ 0

3. **Calculation of cure amount**

   **Add** total prepetition fees, expenses, and charges    Copy total from Part 2 here ▶  + $ 0

   **Subtract** total of unapplied funds (funds received but not credited to account)    − $ _____

   **Subtract** amounts for which debtor is entitled to a refund    − $ _____

   **Total amount necessary to cure default as of the petition date**    (3) $ 0

   Copy total onto Item 4 of Proof of Claim form



# Mortgage
(Closed-End)

GUTSHALL,SHERRY L

HIS MORTGAGE is made on **04/11/2003**. The Mortgagor is **SHERRY L. GUTSHALL**.
If there is more than one, the word "Mortgagor" herein refers to each and all of them. The Mortgagee is **PNC Bank, National Association**.
The word "Borrower" means **SHERRY L GUTSHALL**.
If there is more than one, the word "Borrower" herein refers to each and all of them.

Borrower owes Mortgagee the sum of **forty five thousand one hundred sixty nine dollars and zero cents**
(U.S. $ **45,169.00**  ). This debt is evidenced by Borrower's written obligation (referred to herein as the "Note"), dated **04/11/2003**.
This Mortgage secures to Mortgagee: (a) the repayment of the debt evidenced by the Note, with interest and other charges as provided therein; (b) the payment of all other sums, with interest thereon, advanced hereunder for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred to protect the security of this Mortgage; (c) the payment of all of Mortgagee's costs of collection, including costs of suit and, if permitted by law, reasonable attorneys' fees and expenses, if suit is filed or other action is taken to collect the sums owing or to protect the security of this Mortgage; (d) payment of any refinancing, substitution, extension, modification, and/or renewal of any of said indebtedness, interest, charges, costs and expenses; (e) the performance of Mortgagor's and/or Borrower's covenants and agreements under this Mortgage and the Note; and (f) the repayment of the debt evidenced by any note or agreement which was refinanced by the Note, to the extent that such debt is owed to Mortgagee and has not been paid. For this purpose, Mortgagor does hereby mortgage, grant and convey to Mortgagee the following described property, together with all improvements now or hereafter erected, and all easements, rights and appurtenances thereon, located at and known as:

| 223 CRESCENT ST | | HARRISBURG | PA | 17104 | DAUPHIN |
|---|---|---|---|---|---|
| Recording Date | | 06/09/1995 | | | |
| Deed Book Number | 2422 | Page Number | 277 | | |

*City of Harrisburg Included*

The word "Property" herein shall mean all of the foregoing mortgaged property.
To have and to hold the Property unto the Mortgagee, its successors and assigns, forever. Provided, however, that if Mortgagor and/or Borrower shall pay to Mortgagee the said debt, interest, and all other sums and perform all covenants and agreements secured hereby, then this Mortgage and the estate conveyed by it shall terminate and become void.
**Warranty of Title.** Mortgagor warrants and represents to Mortgagee that: (a) Mortgagor is the sole owner of the Property, and has the right to mortgage and convey the Property; (b) the Property is unencumbered except for encumbrances now recorded; and (c) Mortgagor will defend the title to the Property against all claims and demands except encumbrances now recorded.
**Covenants.** Mortgagor promises and agrees as follows:
(a) Mortgagor will maintain the Property in good order and repair; (b) Mortgagor will comply with all laws respecting the ownership and/or use of the Property; (c) If the Property is part of a condominium or planned unit development, Mortgagor will comply with all by-laws, regulations and restrictions of record; (d) Mortgagor will pay and/or perform all obligations under any mortgage, lien, or security agreement which has priority over this Mortgage; (e) Mortgagor will pay or cause to be paid all taxes and other charges assessed or levied on the Property when due and, upon Mortgagee's request, will deliver to the Mortgagee receipts showing the payment of such charges; (f) While any part of the debts secured by this Mortgage remain unpaid, Mortgagor promises to obtain and keep in force property insurance and, if required by federal law, flood insurance on the Property. The property insurance must cover loss of or damage to the Property and must be in an amount sufficient to protect Mortgagee's interests; flood insurance must be of the type and in the amount required by federal law. Mortgagor agrees to provide Mortgagee evidence of required insurance. All policies must name Mortgagee as a loss payee/secured party and must provide for at least 10 days written notice to Mortgagee of reduction in coverage or cancellation. Mortgagor gives Mortgagee the right and power to sign Mortgagor's name on any check or draft from an insurance company and to apply the money to any debt secured by this Mortgage. This is limited to checks and drafts in payment of a claim under an insurance policy for loss or damage to the Property or for returned or rebated premiums on policies insuring the Property. Mortgagor does not have the right to, and agrees that Mortgagor will not, revoke the power of Mortgagee to make Mortgagee's endorsement. Mortgagee may exercise the power for Mortgagee's benefit and not for Mortgagor's benefit, except as otherwise provided by law; (g) If Mortgagor fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may notify Mortgagor that Mortgagor should purchase the required insurance at Mortgagor's expense. If Mortgagor fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Mortgagee, Mortgagee may purchase insurance to protect Mortgagee's interest, to the extent permitted by applicable law, and charge Mortgagor the cost of the premiums and any other amounts Mortgagee incurs in purchasing the insurance. THE INSURANCE MORTGAGEE PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE MORTGAGOR COULD PURCHASE OTHERWISE. Mortgagee may receive reasonable compensation for the services which Mortgagee provides in obtaining any required insurance on Mortgagor's behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Mortgagee. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If Mortgagor fails to perform any other duty or obligation required by these Covenants, Mortgagee may, at its sole option, advance such sums as it deems necessary to protect the Property and/or its rights in the Property under this Mortgage. Mortgagor agrees to repay Mortgagee any amounts advanced in accordance with this paragraph, with interest thereon, upon demand; (h) Any interest payable to Mortgagee after a judgment is entered or on additional sums advanced shall be at the rate provided for in the Note; (i) Mortgagee may make reasonable entries upon and inspections of the Property after giving Mortgagor prior notice of any such inspection; (j) Mortgagor will not sell, transfer ownership in, or enter into an installment sale contract for the sale of all or any part of the Property; and (k) The promises, agreements and rights in this Mortgage shall be binding upon and benefit anyone to whom the Property or this Mortgage is transferred. If more than one Mortgagor signs this Mortgage, each and all of them are bound individually and together. The covenants made in this section and Mortgagee's remedies set forth below shall not merge with any judgment entered in any legal action and shall apply until all amounts owed are paid in full.
**Default.** Mortgagor will be in default under this Mortgage: (a) if there is a default under the Note; (b) if Mortgagor breaks any promise made in this Mortgage; (c) if any Mortgagor dies; (d) if any other creditor tries to take the Property by legal process; (e) if any Mortgagor files bankruptcy or if anyone files an involuntary bankruptcy against any Mortgagor; (f) if any tax lien or levy is filed or made against any Mortgagor or the Property; (g) if any Mortgagor has made any false statement in this Mortgage; or (h) if the Property is destroyed, or seized or condemned by federal, state or local government.
**Mortgagee's Remedies.** Unless prohibited by law, if Mortgagor is in default under this Mortgage, Mortgagee may, at its option, after notice required by law, if any, declare due and payable the entire unpaid balance of the sums which are secured by this Mortgage and owing upon the Note. If Mortgagee so declares such entire balance due and payable, Mortgagee may take possession of the Property, collect any and all rents, apply said rents to the indebtedness secured by this Mortgage, foreclose the Mortgage, or take other action upon the Mortgage as permitted or provided by law to collect the balance owing. If a mortgage foreclosure action or any other action on this Mortgage is filed by Mortgagee, and/or if Mortgagee takes any action to protect or enforce its interest in any court, including Bankruptcy Court, Mortgagor agrees to pay to Mortgagee all expenses and costs of such action, including, if permitted by law, reasonable attorneys' fees to the maximum extent permitted by law.
**Remedies Cumulative.** If any circumstance exists which would permit Mortgagee to accelerate the balance, Mortgagee may take such action at any time during which such circumstance continues to exist. Mortgagee's remedies under this Mortgage shall be cumulative and not alternative.
**Delay in Enforcement.** Mortgagee can delay in enforcing any of its rights under this Mortgage or the Note without losing that right. Any waiver by Mortgagee of any provision of this Mortgage or the Note will not be a waiver of the same or any other provision on any other occasion.
**Assignment.** Mortgagee may sell, transfer or assign this Mortgage without Mortgagor's consent.
**Severability.** If any provision of this Mortgage is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Mortgage.

WITNESS the signing of this Mortgage on the date set forth above, intending to be legally bound.

Witness _____   Mortgagor _____
                                              *Sherry Lynn Gutshall*

BK 4899 PG 153

PA Witness _____   Mortgagor _____
EFORM115323

**Acknowledgment taken in the STATE OF PENNSYLVANIA, COUNTY OF** DAUPHIN

On this 11TH day of APRIL, 2003, before me, CARLTON DEAN EITNIER, the undersigned officer (who certifies that he/she is not an officer or director of PNC Bank, National Association), personally appeared SHERRY Lynn GUTSHALL known to me (or satisfactorily proven) to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In Witness Whereof, I hereunder set my hand and official seal.

Signature _____

Title NOTARY PUBLIC

> Notarial Seal
> Carlton Dean Eitnier, Notary Public
> Lower Paxton Twp., Dauphin County
> My Commission Expires July 30, 2006
> Member, Pennsylvania Association Of Notaries

**Affidavit of Subscribing Witness** [Do not use if Mortgagor(s) acknowledged the Mortgage. Affidavit must be taken in county where Property is located.]

Before me, a notary public (who certifies that he/she is not an officer or director of PNC Bank, National Association), personally appeared _____, the subscribing witness to the within Mortgage, who being duly sworn according to law, deposes and says that he/she was personally present at the execution of said Mortgage, saw the within named Mortgagor(s) _____ and _____ sign as his/her/their act and deed, and deliver said Mortgage for the purposes therein set forth; and that the name of this deponent affixed thereto as subscribing witness is of deponent's own proper handwriting.

I hereby CERTIFY that this document is recorded in the Recorder's Office of Dauphin County, Pennsylvania.

Philip Spaseff
Recorder of Deeds

Subscribing Witness _____

Sworn to and subscribed before me this _____ day of _____,

Notary Public _____

**Certificate of Residence:** I, _____, do hereby certify that Mortgagee's precise residence is Consumer Loan Center, 2730 Liberty Avenue, Pittsburgh, PA 15222.

_____
Agent for Mortgagee

RECORDED in the STATE OF PENNSYLVANIA, COUNTY OF _____, on this _____ day of _____, in the Office of the Recorder of Deeds in and for said County, in Mortgage Book Volume _____, page _____.

WITNESS my hand and the seal of said office the day and year aforesaid.

Recorder _____

PA EFORM115323-0400

Mail to:
PNC Bank
Consumer Loan Center
Collateral Control
2730 Liberty Avenue
Pittsburgh, PA 15222

From SHERRY GUTSHALL
To PNC Bank, National Association

Mortgage (Closed-End)

Recorded RECEIVED Number 2371/7
2003 MAY 12 A 8:34

BK4899PG 154

# Direct Installment Loan Disclosure and Note

 PNCBANK

**Borrower:** SHERRY L GUTSHALL  **Lender:** PNC Bank, National Association  **Date:** 04/11/2003

Items preceded by "☐" are not applicable unless marked "☒" or the equivalent.

## Truth-in-Lending Disclosures

| ANNUAL PERCENTAGE RATE — The cost of the Borrower's credit as a yearly rate. | FINANCE CHARGE — The dollar amount the credit will cost the Borrower. | Amount Financed — The amount of credit provided to the Borrower or on the Borrower's behalf. | Total of Payments — The amount the Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 6.292 % | $24,914.00 | $45,169.00 | $70,083.00 |

The Borrower's **Payment Schedule** will be:  *e means an estimate*

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 180 | $ 389.35 | Monthly, beginning 06/01/2003 |

**Security:** Lender is getting a security interest in deposits or property held by Lender, and:
☐ None.  ☐ Goods or property being purchased.
☒ Real Estate.  ☐

In addition, collateral (other than Borrower's principal residence) securing other obligations to Lender may also secure this Note.

**Security Interest Charges:**
☐ None    ☒ Filing Fees $ 70.00

**Variable Rate:** ☐ Not Applicable.
☒ This loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.
☒ The Annual Percentage Rate may increase if the Prime Rate published in *The Wall Street Journal* increases. The rate will not increase more often than once a month. The rate will not increase more than one percentage point in any one month and will not increase more than five percentage points during the term of the loan. The rate will never increase beyond 18%. Any increase in the rate as a result of an increase in the index may cause the number of payments to increase, and/or:
☐ the amount of the final payment to change. The final payment will never be increased to more than 150% of the regular payment. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the rate increased to 14 1/2% after 12 payments, increased to 15 1/2% after the next 12 payments, and then remained the same for the term of the loan, you would be required to pay one additional payment of $254.88.
☐ the amount of the payments to change. The amount of the payments may increase every four years. The final payment will never be increased to more than 150% of the regular payment. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 72 monthly payments of $203.39, and the rate increased to 14 1/2% after 12 payments, increased to 15 1/2% after the next 12 payments, and then remained the same for the term of the loan, the payment amount would increase to $227.12 for the 49th through the 72nd payments.
☐ If Borrower's participation in the automatic payment plan is discontinued for any reason, the Automatic Payment Plan Discount of     percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Discount terminated after 12 payments, the payment amount would increase to $     for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)
☐ If Borrower's participation in the Club or Package Plan is discontinued for any reason, the Club Discount of     percentage points will terminate and may cause the rate to increase. Any increase in the rate will cause the amount of the payments to increase. For example, if your loan were for $10,000.00 at an initial interest rate of 13 1/2%, repayable in 48 monthly payments of $270.76, and the Club Discount terminated after 12 payments, the payment amount would increase to $     for the remainder of the term of the Note. (The payment example assumes Borrower has not elected to purchase Credit Insurance.)
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

**Late Charge:** ☐ Not Applicable. ☒ If a payment is not paid in full within 15 days of its due date, Borrower may be charged the greater of $20.00 or 5% of the total payment.
**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty.
**Required Deposit Balance:** ☒ Not Applicable. ☐ The Annual Percentage Rate does not take into account any required deposit balance.
**Assumption:** If this loan is secured by a dwelling, someone purchasing that dwelling cannot assume the remainder of the loan on the original terms.

### Itemization of Amount Financed

Amount Financed
$ See Settlement Statement
(1) Amount given directly to Borrower
$ See Settlement Statement
(2) Amount paid on Borrower's account
$
(3) Amount retained by Lender for
See Settlement Statement
$
(4) Amount paid to others on Borrower's behalf:
(a) to public officials
$ See Settlement Statement
(b) for credit insurance
$
(c) to See Settlement Statement
$
(d) to
$
(e) to
$
(f) to
$
(g) to
$
(h) to
$
(i) to
$

Prepaid Finance Charge
$

Itemization of Amounts paid by Borrower at the time the loan is made:
(1) $
(2) $
(3) $

**Credit Insurance Is Not Required. Borrower May Cancel Credit Insurance at Any Time Without Penalty.** Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless Borrower signs below and agrees to pay the additional cost(s). Insurance may be purchased on the life of one or two Borrowers. Credit Disability Insurance may be purchased on only one Borrower. If obtained through Lender the cost of the insurance for the original term of the credit is stated below. Lender may receive financial benefits from the Borrower's purchase of insurance. "Borrower" who is insured may not be a Co-Maker.

I want Single Credit Life Insurance which costs $ _____
Signature of Person to be insured for Single Credit Life Insurance

I want Single Credit Disability Insurance which costs $ _____
Signature of Person to be insured for Single Credit Disability Insurance

We want Joint Credit Life Insurance which costs $ _____
1. _____  2. _____
Signatures of Persons to be insured for Joint Credit Life Insurance

Borrower does not desire or is not eligible for credit insurance: *Sherry L Gutshall*
Signature of Borrower

Notice to Borrower(s): The maximum amount of coverage which insured Borrower(s) will receive is set forth in the certificate or policy, as applicable.

**Direct Loan Note Index.** The index is for convenience and reference. It shall not limit the meaning or scope of any paragraph or section. The numbers refer to the paragraph numbers of the Note.

| | |
|---|---|
| Acceleration of the outstanding balance | 14 |
| Application of payments | 9 |
| Assignment | 24 |
| Attorneys' fees | 2,22 |
| Automatic payment plan | 5 |
| Borrower's responsibilities | 2,14,25,27,31 |
| Changes in interest rate | 4,5,6,7,13 |
| Closing costs | 2 |
| Club or Package Plan | 6 |
| Collateral | 18,20,23 |
| Collection expenses | 2,22 |
| Communication concerning disputed debts | 29 |
| Computing interest | 8 |
| Court costs | 2,22 |
| Credit Insurance | 26 |
| Credit reports | 30 |
| Daily balance | 4,8 |
| Daily interest rate | 4,8 |
| Default | 14 |
| Definitions | 1 |
| Delay in enforcement | 16 |
| Deposit | 23 |
| Disputed debts | 29 |
| Early payment | 19 |
| Finance charges | 4,8 |
| Flood insurance | 20 |
| Governing law | 28 |
| Heirs bound | 27 |
| Index | 4 |
| Insurance | 26 |
| Insurance checks | 21 |
| Interest after maturity and judgment | 13 |
| Interest rate | 2,4,5,6,7,8,13 |
| Late charges | 10 |
| Legal fees | 2,22 |
| Lender | 1 |
| Lender's right to endorse checks | 21 |
| Margin | 4 |
| Monthly payment | 3,7 |
| Monthly payment changes | 7 |
| Multiple parties | 25 |
| Paid in full checks | 29 |
| Payment application | 9 |
| Payment Due Date | 3 |
| Payment Schedule | 3,7 |
| Personal representatives bound | 27 |
| Prepayment | 19 |
| Promise to pay | 2 |
| Property insurance | 20 |
| Release of borrowers | 17 |
| Release of security | 17 |
| Remedies | 14 |
| Return Check Charge | 11 |
| Security interest | 18,20,23 |
| Security interest charges | 18 |
| Security interest in deposits | 23 |
| Variable rate | 4,5,6 |
| Waiver | 12,15 |

# Direct Installment Loan Disclosure and Note

Borrower: SHERRY L GUTSHALL       Lender: PNC Bank, National Association       Date: 04/11/2003

## Direct Installment Loan Note

**1. Definitions.** In this Note, the word "Borrower" means each and all of those who sign this Note and each and all of those who endorse the check which disburses the "Amount given directly to Borrower."
The word "Lender" means PNC Bank, National Association
or any person to whom this Note has been transferred.

**2. Borrower's Promise to Pay.** To repay this loan, Borrower promises to pay to Lender $ 45,169.00, with interest on the unpaid balance from the date funds are advanced until paid in full. Interest shall be paid at the rate per annum of 6.290 %. Borrower promises to make payments in accordance with the payment schedule stated in this Note. Borrower promises to pay to Lender all other amounts which may become due under the terms of this Note, including, if applicable, Credit Insurance Premiums, Late Charges and Costs of Collection. Borrower agrees to make payments at the place designated by Lender. Borrower may also be required to pay to Lender certain other charges before Lender will give any money to Borrower. These charges, if any, are stated on page one in "Itemization of Amounts paid by Borrower at the time the loan is made" and/or in the Settlement Statement.

**3. Payment Schedule.** Borrower agrees to pay to Lender the amounts due under this Note:
[X] in uninterrupted monthly payments: 179 payments of $ 389.35 and a final payment, which will be billed by Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on 06/01/2003.
Payments will continue until all amounts due are paid.
[ ] in uninterrupted monthly payments, except for the months shown:
payments of $        and a final payment, which will be billed by the Lender, of all remaining unpaid amounts. Payments will be due on the same day of each month starting on        , PROVIDED, HOWEVER, that no payments shall be due during the months of        ,        or        each year.
[ ] in a single payment of $        plus accrued interest and all other amounts due on        .
[ ] In addition, prior to the month of the first scheduled payment as stated above, interest shall be payable monthly on the unpaid balance and shall be due on the same day of the month as the later payments.
The date that the final payment is scheduled in this paragraph to be due is called the "Maturity Date" of this Note. If Borrower elects to purchase Credit Insurance and then elects to cancel the Credit Insurance, the Payment Schedule may change as described in the "Credit Insurance" paragraph.

**4. Variable Rate.** [X] Not Applicable. [ ] The interest rate on this Note can change based on changes in the Interest Rate Index ("Index"). The rate will be based on the Margin, the Index, and applicable discounts, if any. The Index may change from time to time; the Margin will remain the same for the term of the Note. The interest rate stated in the "Borrower's Promise to Pay" is the "Base Rate." The Base Rate was computed by adding the Margin to the original Index, and then subtracting the Automatic Payment Plan Discount and/or the Club Discount, if applicable. Interest rate adjustments are computed by adding the Margin to the current Index at the time of the adjustment (subject to the limitations described below), and then subtracting the Automatic Payment Plan Discount and/or the Club Discount, if applicable. The interest rate on this loan may be adjusted monthly, on the first calendar day of each calendar month, beginning in the month after the funds are advanced. The Margin is 0.000 percentage points. The Index is the highest prime rate published in the "Money Rates" section of *The Wall Street Journal* ("Prime Rate") on the last day on which the Prime Rate is published in the preceding calendar month. The Index is not necessarily the lowest rate charged by Lender on loans. If the Index shall cease to be available, Lender shall select a new index, which, in Lender's sole opinion upon a reasonable basis, is comparable to the Index. The annual interest rate will not increase or decrease more than one percentage point in any calendar month, and will not increase or decrease more than five percentage points during the term of the loan, due to changes in the Index. (A change caused by a termination of the Automatic Payment Plan Discount or the Club Discount is not subject to the limitations set forth in the previous sentence.) The annual interest rate will not exceed 18%.

**5. Automatic Payment Plan.** [ ] Not Applicable. [X] Borrower authorizes Lender to deduct the payments on this loan from Borrower's deposit account number        on each scheduled payment due date. The interest rate on this loan may increase by 0.250 percentage points ("Automatic Payment Plan Discount") if participation in the automatic payment plan is discontinued for any reason, including: (a) if any Borrower chooses to terminate participation; (b) the deposit account identified above is closed; or (c) if there are not sufficient funds in the account to make the full monthly payment on three payment dates.

**6. Club or Package Plan.** [ ] Not Applicable. [X] Borrower is participating in the package of banking services known as, or is a qualified member of a club group known as: PREMIUM PLAN. The interest rate on this Note may increase by 0.250 percentage points ("Club Discount"), if participation in this Package Plan or Club Group is discontinued for any reason.

**7. Monthly Payment Changes.**
[ ] The payment amounts will not change over the term of the loan except as stated in the "Payment Schedule."
[X] The payment amounts may increase (but will not decrease) if Borrower terminates participation in the [X] Club or Package Plan [X] Automatic Payment Plan. Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the new interest rate. If the payment amount will increase, Lender will notify Borrower of the effective date and amount of the new payment.
[ ] Changes in the interest rate may cause the number of payments to change and/or the amount of the final payment to change. One month before the Maturity Date, if necessary, the number of payments due will increase so that the final payment will not be more than 150% of the previously scheduled monthly payment.
[ ] Changes in the interest rate may cause the number of payments to change and/or the amount of the payments to increase; the first change in the payment amount may occur on a date 48 months after the due date of the first monthly payment; subsequent changes, if applicable, will occur every 48 months thereafter. Not more than 45 days, but not less than 25 days, before the date of each payment change, Lender will calculate the new payment amount. The payment amount may increase but will not decrease, except for the final payment. Lender will determine the amount of equal monthly payments that would be sufficient to repay in full, by the Maturity Date, the unpaid principal balance that is expected to be due on the payment change date, at the interest rate in effect at the time the calculation is being made. Lender will notify Borrower of the new amount of the payment which is due. One month before the Maturity Date, if necessary, the number of payments due will increase so that the final payment will not be more than 150% of the previously scheduled monthly payment.

**8. Computing Interest.** Interest is charged on a daily basis, according to the outstanding balance subject to interest on each day of the loan term. The daily interest rate is equal to the annual interest rate in effect on that day divided by the number of days in that calendar year. Borrower agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge); early payments will result in less interest being charged. If the interest rate on this Note will not change because of changes in the Index (see the "Variable Rate" section), early and/or late payments will cause the amount of the final payment to change. If the interest rate on this Note can change because of changes in the Index (see the "Variable Rate" section), early and/or late payments will cause the number of payments due, the amount of the payments (if the amount of the payments is subject to change every 48 months) and/or the amount of the final payment to change.

**9. Application of Payments.** Lender will apply payments in the following order of priority: credit insurance premiums, if any, interest, late charges, fees, and then principal. All regular payments will be applied to the satisfaction of scheduled payments in the order in which they become due.

**10. Late Charge.** [ ] Not Applicable. [X] Borrower agrees that Lender may assess a late charge for any payment not paid in full within 15 days of its due date. The late charge will be the greater of $20.00 or 5% of the total amount of the payment which was not paid in full. No late charge will be due, however, if the reason that the payment is late is either: (a) attributable to a late charge assessed on a prior payment; or (b) because, after default by Borrower, the entire outstanding balance on this Note is due. No more than one late charge will be imposed for any single scheduled payment.

**11. Return Check Fee.** Borrower agrees that Lender may assess a fee of $20.00 if Borrower makes a payment with a check that is returned by the drawee for "not sufficient funds" in the account on which the check is written.

**12. Waiver by Lender.** If Borrower has made or makes in the future another loan agreement with Lender, Lender might obtain a security interest in the principal dwelling of Borrower or someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of Borrower with Lender. Lender waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Note unless the security interest is specifically given to secure this Note.

**13. Interest After Maturity and Judgment.** Unless prohibited by applicable law, interest at the rate provided in this Note shall continue to accrue on the unpaid balance until paid in full, even after (whether by acceleration or otherwise) maturity, and/or if Borrower becomes a debtor in an action filed under the Bankruptcy Code and/or if judgment is entered against Borrower for the amounts due. If at any time interest as provided for in this paragraph is not permitted by law, interest shall, in that event and at that time, accrue at the highest rate allowed by applicable law. If the interest rate on this Note can change, the interest rate which will apply beginning on the date a lawsuit is filed by Lender shall be the interest rate in effect on that date or the interest rate stated in the "Borrower's Promise to Pay," whichever is less.

**14. Default.** (As used in this paragraph, the term "Borrower" includes Borrowers, Co-Makers, Guarantors, sureties, and any owner of property which is security for this Note.) Borrower will be in default:
(a) if Borrower does not make any payment before or on the date it is due; or
(b) if Borrower fails to keep any promise made in this Note or defaults in any other note, loan or agreement with Lender; or
(c) if anyone who signs the security agreement or a mortgage securing this Note breaks any promise made in the security agreement or mortgage; including but not limited to the promise not to sell, give away or transfer title to the property which is the subject of the mortgage or security interest; or
(d) if any property in which Lender has obtained a security interest to secure this Note is lost, stolen (and not recovered within a reasonable time) or destroyed; or
(e) if Borrower has made any untrue statement or misrepresentation in the credit application or any other certificate or document given or made for this loan; or
(f) upon the death of Borrower or any one of them, if there is more than one; or
(g) if Borrower provides Lender with false information or forged signatures at any time; or
(h) if a court with proper jurisdiction to do so finds that Borrower, or any one of them, is incapacitated or incompetent; or
(i) if Lender in good faith believes that the prospect of Borrower's paying this Note is impaired.

If Borrower is in default, the entire outstanding balance on this Note shall be immediately due, at the option of the Lender. This will happen without any prior notice to Borrower, or right to cure, except as may be required by law.

Borrower will also be in default:
(j) if Borrower becomes insolvent and/or cannot pay Borrower's debts as they become due; or
(k) if any other creditor tries by legal process to take any money or property of Borrower in the Lender's possession; or
(l) if Borrower files a bankruptcy petition or if anyone files an involuntary bankruptcy against Borrower; or
(m) if Borrower makes an assignment for the benefit of creditors, or any insolvency, reorganization, arrangement, debt adjustment, receivership, trusteeship, liquidation or other legal or equitable proceedings are instituted by or against Borrower; or
(n) if any judgment, tax lien, municipal charge or tax levy is filed or writ of execution is issued against Borrower.

# Direct Installment Loan Disclosure and Note



**Borrower:** SHERRY L GUTSHALL  **Lender:** PNC Bank, National Association  **Date:** 04/11/2003

---

**Direct Installment Loan Note — continued**

If any event described in (j), (k), (l), (m) or (n) happens, the entire outstanding balance on this Note shall be immediately due without any prior notice to Borrower, or right to cure, except as may be required by law.

A default by Borrower on this Note is a default on every other note, loan or agreement of Borrower with Lender.

**15. General Waiver Provisions.** Borrower waives presentment for payment, demand, protest, notice of protest, dishonor and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower further waives any right to require due diligence in collection by Lender.

**16. Delay in Enforcement.** Lender can delay enforcing any rights under this Note without losing any rights. Lender's failure to enforce any right under this Note shall not act as a waiver of that right or preclude the exercise of that right in the event of a future occurrence of the same event. Lender can also extend the time allowed for making payments, and such extension shall not affect the obligations of any Borrower, whether or not that Borrower is given notice of the extension.

**17. Release of Some Borrowers or Some Security.** If there is more than one Borrower, each agrees to remain bound by this Note, although Lender may release any other Borrower or release or substitute any property which is security for the repayment of this Note. Borrower waives all defenses based on suretyship and impairment of collateral or security.

**18. Security Interest Charges.** Borrower agrees to pay any recording, filing, satisfaction and encumbrance fees which may be charged. The charges are to repay Lender for the fees paid to public officials to protect, continue, or release any security interest given in the security agreement or mortgage.

**19. Prepayment.** Borrower may prepay, in full or in part, the amount owed on this Note at any time without penalty. If Borrower prepays the loan in part, Borrower agrees to continue to make regularly scheduled payments until all amounts due under this Note are paid.

**20. If Lender Obtains a Security Interest to Secure Borrower's Payment of this Note, Borrower Makes the Following Additional Promises to Lender:**

(a) if property insurance is required by a mortgage and/or security agreement securing the repayment of this Note and/or if flood insurance is required by federal law, BORROWER MAY OBTAIN THE INSURANCE FROM ANYONE OF BORROWER'S CHOICE subject to Lender's reasonable approval. If flood insurance is required, Borrower has been separately notified. The property insurance must cover loss of or damage to the collateral and must be in an amount sufficient to protect Lender's interests; flood insurance must be of the type and in the amount required by federal law;

(b) Borrower agrees to provide Lender evidence of required insurance. All policies must name Lender as a loss payee/secured party and must provide for at least 10 days written notice to Lender of reduction in coverage or cancellation;

(c) if Borrower fails to keep in force the required insurance and/or fails to provide evidence of such insurance to Lender, Lender may notify Borrower that Borrower should purchase the required insurance at Borrower's expense. If Borrower fails to purchase the insurance within the time stated in the notice and/or fails to provide evidence of such insurance to Lender, Lender may purchase insurance to protect Lender's interest, to the extent permitted by applicable law, and charge Borrower the cost of the premiums and any other amounts Lender incurs in purchasing the insurance. THE INSURANCE LENDER PURCHASES WILL BE SIGNIFICANTLY MORE EXPENSIVE AND MAY PROVIDE LESS COVERAGE THAN INSURANCE BORROWER COULD PURCHASE OTHERWISE. Upon demand, Borrower promises to pay Lender the cost of insurance purchased and other amounts incurred by Lender. Borrower agrees that Lender may, if permitted by applicable law, add the cost of the insurance to the amounts on which interest is charged at the rate provided in this Note. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with Lender. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks. If additional information is required concerning insurance or our affiliate arrangements, please contact Centralized Customer Assistance, 2730 Liberty Avenue, Pittsburgh, PA 15222;

(d) to pay all taxes due on the collateral. If Borrower does not pay the taxes, Lender has the option to pay the taxes. Upon demand, Borrower promises promptly to repay to Lender any amounts paid by Lender for taxes;

(e) if Lender gets a security interest in stock or securities, the value of the collateral may become insufficient to protect Lender. If that happens, Borrower agrees to deliver to Lender additional collateral which Lender believes will be enough to protect Lender;

(f) to allow Lender the right to inspect the collateral at any reasonable time, and to maintain the collateral in good condition and repair; reasonable wear and tear excepted;

(g) if amounts are advanced by Lender under this Note for taxes and/or insurance, Lender may, at its option, if permitted by applicable law, add the amounts so advanced to the outstanding balance and require repayment with interest by increasing the installment payments so that the outstanding principal balance is repaid in full in substantially equal installments on the due date stated in the payment schedule; and

(h) Borrower's promises made and Lender's rights set forth in this section shall not merge with any judgment in any legal action and shall apply until all amounts owed are paid in full.

**21. Lender May Sign Borrower's Name to Insurance Checks.** Borrower gives Lender the right and power to sign Borrower's name on any check or draft from an insurance company. This is limited to a check or draft in payment of returned premiums, benefits under credit life insurance or credit disability insurance, and claims made under physical damage insurance and flood insurance covering property which is security for this loan. Borrower does not have the right to, and agrees that Borrower will not, revoke the power of Lender to make Borrower's endorsement. Lender may exercise the power for Lender's benefit and not for Borrower's benefit, except as otherwise provided by law.

**22. Costs of Collection.** If Lender files suit or takes action to collect this loan or protect the collateral or the Lender's security interest in it, Borrower agrees to pay Lender's costs and expenses to do so, if Lender is permitted by applicable law to require Borrower to pay those costs. Unless such action is taken in Ohio, this shall include reasonable attorneys' fees and expenses to the maximum amount permitted by applicable law.

**23. Security Interests in Deposits.** The Lender may set-off any amounts due and unpaid under this loan against any of Borrower's money on deposit with Lender. This includes any money which is now or may in the future be deposited with Lender by Borrower or with any co-depositor, including Borrower's spouse. This also includes any property, credits, securities, or money of the Borrower, which may at any time be delivered to or in the possession of the Lender. This may be done without any prior notice to Borrower.

**24. Assignment.** Borrower may not assign or otherwise transfer his rights under this Note to anyone else. Lender may sell, transfer, or assign this Note, and any security agreement and/or mortgage given to secure this Note, and Borrower's rights and obligations under this Note will continue unchanged.

**25. Multiple Parties.** If there is more than one Borrower, each agrees to be responsible to Lender, individually and together, for payment in full of this loan. Borrowers agree that payment of all or part of the proceeds of this Note to any Borrower or to anyone else at the direction of any Borrower will be the equivalent of payment to each Borrower and for the benefit of all Borrowers.

**26. Credit Insurance.** If Borrower has elected to purchase credit insurance, Borrower may cancel that insurance at any time without penalty. In the event of cancellation, the payment amounts shown in the "Payment Schedule" will not decrease; rather, the loan will be paid off more quickly since more of the payment will be directed to payment of the principal balance of the loan.

**27. Heirs and Personal Representatives Bound.** The provisions of this Note shall be binding upon the Borrower, and the heirs and personal representatives of the Borrower.

**28. Governing Law and Construction.** This Note has been accepted by Lender in Pennsylvania and all loans shall be extended by Lender to Borrower in Pennsylvania. Regardless of the state of Borrower's residence or the place to which Borrower submitted an application, Borrower agrees that the provisions of this Note relating to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, Pennsylvania law. Unless preempted by federal law, other substantive terms and provisions shall be governed by and construed in accordance with the law of Pennsylvania; procedural matters relating to the enforcement of the obligations evidenced by the Note and matters related to the granting, perfection and enforcement of a security interest securing this Note, if any, shall be governed by the laws of the state where the enforcement, granting or perfection takes place.

**29. Communication Concerning Disputed Debts.** ALL COMMUNICATIONS BY BORROWER TO LENDER CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE LOAN, SHOULD BE SENT TO CENTRALIZED CUSTOMER ASSISTANCE, 2730 LIBERTY AVENUE, PITTSBURGH, PA 15222.

**30. Credit Reports.** BORROWER AUTHORIZES LENDER TO OBTAIN CREDIT REPORTS ON BORROWER FROM TIME TO TIME AT LENDER'S DISCRETION WHILE BORROWER HAS A LOAN OUTSTANDING WITH LENDER.

**31. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETELY FILLED-IN COPY OF THIS NOTE AND DISCLOSURE. BY SIGNING BELOW, BORROWER AGREES TO BE LEGALLY BOUND BY ALL THE TERMS AND CONDITIONS OF THIS NOTE.** Each of the Borrowers guarantees that the signature of any Borrower is genuine.

_____  4-11-03
Borrower's Signature SHERRY L GUTSHALL    Date

_____  _____
Borrower's Signature    Date

**32. CO-MAKERS SEE NOTICE TO CO-SIGNER BELOW.** Any Borrower who is designated as a Co-Maker agrees to be equally responsible with all other Borrowers for the payment of this loan and performance of all promises in this Note.

_____  _____
Co-Maker's Signature    Date

_____  _____
Co-Maker's Signature    Date

---

**NOTICE TO CO-SIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, such as suing you, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

**PNC BANK**

### CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Secretary of PNC Bank, National Association does hereby certify as follows:

1. National City Bank was a wholly owned subsidiary of National City Corporation.

2. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

3. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

4. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.), having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Association this 6th day of November, 2009.

_Janet L. Deringer_



Member of The PNC Financial Services Group

One PNC Plaza 249 Fifth Avenue Pittsburgh Pennsylvania 15222 2707



Case 1:12-bk-06956-RNO  Claim 2-1 Part 5  Filed 12/13/12  Desc Exhibit  Page 1
Case 1:12-bk-06956-RNO  Doc 310 5 Filed 05/24/19  Entered 05/24/19 14:49:44  Desc
H:\DSL\BOARD\CERT\NATIONAL CITY-NATIONAL CITY BANK  Main Document  Page 12 of 12